

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: 05-22633-CIV-KING**

ON TRACK TRANSPORTATION, INC.
an Illinois corporation, and
ON TRACK TRANSPORTATION OF
FLORIDA, INC., an Illinois corporation,

        Plaintiffs,

v.

JUST ON TRACK TRANSPORTATION, LLC,
a Florida corporation, JOT TRANSPORTATION,
LLC, a Florida corporation, and TOMAS ACEA,
individually,

        Defendants.

_____/

**CLOSED**
**CIVIL**
**CASE**

## FINAL SUMMARY JUDGMENT

THIS CAUSE comes before the Court on Plaintiffs, On Track Transportation, Inc. ("On Track") and On Track Transportation of FL, Inc. ("On Track Florida"), Motion for Summary Judgment. (DE # 29). Defendants did not file a response to the motion. On September 29, 2006, this Court entered an Order granting Plaintiffs' Motion and directed Plaintiffs to submit a draft final order. (DE # 33). On September 28, 2006, Defendants Just On Track Transportation, LLC ("Just On Track"), JOT Transportation, LLC ("JOT") filed a Chapter 7 bankruptcy petition and filed a Notice Suggestion of Bankruptcy with this Court on October ___, 2006. (DE # ___). On October _10_, 2006, Plaintiffs' counsel submitted a draft order on Plaintiffs' Motion for Summary Judgment seeking entry of summary judgment against Defendant Tomas Acea. (DE # ___).

**I.    Factual Background.**

Plaintiffs are in the business of common and contract carrier services, between commercial shippers and receivers. (DE #30, Declaration of Michael Beckman ¶ 4; DE #16 at ¶ 1).    On

Track has federally registered trade name and service mark On Track Transportation® (the "Marks") in connection with its common and contract carrier services and has licensed the use of the Marks to On Track Florida. (DE #30, Declaration of Michael Beckman ¶ 4; DE #16 at ¶ 1). (DE #30, Declaration of Michael Beckman ¶ 4; DE #16 at ¶ 1). On Track has continuously used the Marks since the date of its registration and has given notice to the public of the registration of the Marks as provided in 15 U.S.C. § 1111. (DE #30, Declaration of Michael Beckman ¶ 4; DE #16 at ¶ 1). On Track has invested its resources to create value and goodwill in the Marks which has resulted in members of the purchasing public throughout Florida and the United States associating the Marks with the common and contract transportation services offered by On Track and its authorized licensee, On Track Florida. (DE #30, Declaration of Michael Beckman at ¶¶ 9-10).

On Track Florida hired Defendant Tomas Acea ("Acea") in January 2003. (DE #30, Declaration of Michael Beckman at ¶¶ 11, 12; DE #16 at ¶ 1). Acea was responsible for On Track Florida's company operations in Miami, Florida. (DE #30, Declaration of Michael Beckman at ¶ 12, DE #16 at ¶ 1). During Acea's tenure with On Track Florida, the company procured dozens of customers that hired On Track Florida for the common and contract transportation services. (DE #30, Declaration of Michael Beckman at ¶ 13). Among other customers, On Track Florida provided services to Excel Cargo Services, Inc., a Caribex Worldwide Company ("Excel"), Crowley Logistics, Inc. ("Crowley"). and Sunwise Corporation, a division of Hanover Foods Corporation ("Hanover"). (DE #30, Declaration of Michael Beckman at ¶ 14).

Between 2003 and 2005, Acea was also responsible for requesting and coordinating advances to drivers who were going to transport loads for On Track Florida. (DE #30, Declaration of Michael Beckman at ¶ 15). To facilitate the process of getting advances to On Track Florida drivers on the road who needed them, On Track Florida opened an account with a company known

as Comdata Corporation ("Comdata"). (DE #30, Declaration of Michael Beckman at ¶ 16, DE #16 at ¶ 1). Comdata provides electronic funds disbursement to the ground fleet transportation industry. (DE #30, Declaration of Michael Beckman at ¶ 11, DE #16 at ¶ 1). When an On Track Florida driver needed an advance, the driver would request a "Comchek" or "Fuel Card" from Acea who would in turn place an order with Comdata. After debiting On Track Florida's account the amount of the advance, plus a fee, Comdata would then prepare and deliver the Comchek and/or Fuel Card to driver on the road. (DE #30, Declaration of Michael Beckman at ¶ 16, DE #16 at ¶ 1).

On a weekly basis, Acea was to report to Michael Beckman at On Track Florida's Schaumburg, Illinois' office, the names of the On Track Florida drivers who received these advances, the amount each driver received and identify the related load. (DE #30, Declaration of Michael Beckman at ¶ 17; DE # 23 at p. 3). Upon receipt of this information, Beckman's assistant would deduct the amount of the advance each driver received, plus the associated fee, from the amount the driver was to be paid for the load transported. (DE #30, Declaration of Michael Beckman at ¶ 17). Between 2003 and 2005, Acea requested hundreds of Comcheks and Fuel Cards, sometimes payable to himself, but he failed to provide On Track Florida with all of the information to properly deduct the advances from the drivers' payments. (DE #30, Declaration of Michael Beckman at ¶ 15; D.E. # 23 at p. 3).

Between January 2003 and July 2005, Comdata billed On Track Florida for $1,857,252.97 in Comcheks and Fuel Cards, and On Track Florida paid that amount. On Track Florida has attempted to reconcile the records from Comdata with the records of On Track Florida obtained from Acea upon his departure, but has been unable to ascertain which drivers to bill for charges totaling $185,051.86. (DE #30, Declaration of Michael Beckman at ¶¶19-20 and Exhibit "A" thereto). As a result of Acea's failure to provide the required information, On Track Florida been

unable to recover $185,051.86 from the drivers, including Acea. (DE #30, Declaration of Michael Beckman at ¶ 21).

On Track Florida ceased its operations in Miami, Florida on or about July 22, 2005. (DE #30, Declaration of Michael Beckman at ¶ 22 ; DE #16 at ¶ 1). Acea was employed by On Track Florida up until July 29, 2005. (DE #30, Declaration of Michael Beckman at ¶ 23 ; DE #16 at ¶ 1). Before Acea's employment with On Track of Florida terminated, Acea formed two businesses, Just On Track Transportation LLC and JOT LLC. (DE #30, Declaration of Michael Beckman at ¶ 24; DE #16 at ¶ 1).

Thereafter, Plaintiffs retained a private investigative firm, NHS, Inc., to investigate Acea and his companies. (DE #30, Declaration of Michael Beckman at ¶ 29). On October 27, 2005, the investigator went to JOT's business address at 13900 NW 112 Avenue, Hialeah, Florida and met with the dispatcher. (DE #30, Declaration of Joe Biundini at ¶¶ 4, 5). The investigator asked the dispatcher what "JOT" stands for, and was told "it stands for Just On Track Transportation, but they just call it JOT." (DE #30, Declaration of Joe Biundini at ¶ 6). The dispatcher also identifed Acea as the owner. (DE #30, Declaration of Joe Biundini at ¶ 7).

On Track Florida's customers, Hanover, Excel and Crowley were all contacted by Acea prior to his employment with On Track Florida terminating and JOT began shipping for these customers. (DE # 28).[1]  Hanover's records evidence "JOT Transportation LLC" being paid for services provided by "On Track Transportation" as Hanover's "Outside Trucking Co." on July 27 and 28, 2005--prior to Acea's termination. (DE # 28). The Hanover documents also show JOT's conduct in "taking over" the On Track Florida account and thereafter being paid tens of thousands

---

[1] Plaintiffs filed the Declarations of Gary Knisely of Hanover Foods Corporation, Russell Loseke of Excel Cargo Services, Inc., and Linda McKenzie of Crowley Logistics, Inc., along with these companies' shipping records. (DE # 30).

of dollars. (DE # 28). Between July 2005 and February 2006, Hanover paid JOT Transportation $198,393.07 for its services. (DE # 28).

Excel's records reflect that as of July 27, 2006, On Track Florida was still being recognized as the shipper for Excel. (DE # 28). On Track Florida, however, was never paid for jobs it performed. To the contrary, the checks for the services were made payable to "JOT Transportation." (DE # 28). Further, an August 2, 2005 facsimile from Excel authorizing a container to be released to JOT contains a handwritten notation revealing the meaning of the moniker JOT: "Just On Track." (DE # 28) Between July 2005 and February 2006, Excel paid JOT $43,926.40 for its services. (DE # 28). In addition, Crowley's records reveal that JOT began conducting business with Crowley in August 2005. Between August 2005 and January 2006, Crowley paid JOT $256,872.50 for its services. (DE # 28). To date, Defendants have earned at least $499,191.97 from On Track Florida's customers. (DE # 28).[2]

## II.   Summary Judgment Standard of Review.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Fed. R. Civ. P.* 56(c). A moving party bears the initial burden of showing the Court, by reference to the materials on file, that there are no genuine issues of material fact that should be decided at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). A moving party discharges its burden on a motion for summary judgment by "showing" or pointing out" to the Court that there is an absence of

---

[2] Following the commencement of this action, the Defendants agreed to the entry of a permanent injunction enjoining them from any further use of the On Track Marks. JOT and Just On Track Transportation both further agreed to "reincorporate under new names that will be substantially distinct from and not confusingly similar to their current names, or the name On Track or any variation of On Track," although neither company ever did so. (DE # 10; DE #30, Declaration of Michael Beckman at ¶ 30).

evidence to support the non-moving party's case. *Id.* at 325. When a party has discharged its burden, the non-moving party must then "go beyond the pleadings" and by its own affidavits, or by "deposition, answers to interrogatories, and admissions on file" designate specific facts showing that there is a genuine case for trial. *Id.* at 324. If the moving party carries its burden, the party opposing summary judgment "may not rest upon mere allegations or denials," rather the opposing party must "set forth specific facts showing that there is a genuine issue for trial." *Fed. R. Civ. P.* 56(b). The Court must draw all ambiguities and inferences in favor of Plaintiff. *Andersen v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). The inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.

## III. Discussion.

Plaintiffs seek a summary judgment order on Counts I-VII of their Amended Complaint. Defendants failed to file a response to Plaintiffs' motion and shortly after the deadline for filing a response had passed, Just On Track and JOT sought bankruptcy protection. As a result, this Court will consider solely the Plaintiffs' claims against Defendant Acea.

### A.     *Trademark Infringement*

Section 32 of the Lanham Act, 15 U.S.C. § 1114(1)(a), provides in pertinent part that "[a]ny person who shall, without the consent of the registrant — use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . . shall be liable in a civil action by the registrant . . . ." Furthermore, 15 U.S.C. § 1125(a), provides in pertinent part that "[a]ny person who, on or in connection with any goods or services . . . uses in commerce any word, term,

name, symbol . . . or any false designation of origin, false or misleading description of fact, which is likely to cause confusion or to cause mistake, or to deceive as to affiliation . . .or as to origin, sponsorship, or approval of . . .goods [or] services . . . shall be liable in a civil action."

The remedies available to the registrant are set forth in 15 U.S.C. §1117.   A registrant whose rights are violated may generally recover the defendant's profits from the infringing activity (or its own damages or both) together with costs of the action.  Based on equitable considerations, the trial court may, in its discretion, reduce or enhance the resulting award up to three times the original amount, and may, in exceptional cases, award attorneys' fees.  15 U.S.C §1117(a).  If the infringement is intentional, however, §1117(b) governs: unless the court finds extenuating circumstances, treble damages and attorneys' fees are mandated.  15 U.S.C. §1117(b).  *Chanel, Inc. v. Italian Activewear of Florida, Inc.,* 931 F.2d 1472, 1475-76 (11th Cir. 1991).

The Court finds that Plaintiff On Track is entitled to summary judgment against Defendant Acea because Acea marketed and promoted Just On Track and JOT through the unauthorized use of the On Track Marks.  This Court further finds that such use caused confusion, mistake or deception to the effect that On Track sponsored or approved of Acea's businesses, Just On Track and JOT.

Both natural persons, as well as corporations, may be held liable for trademark infringement under the Lanham Act.  *Levi Strauss & Co. v. Diaz,* 778 F. Supp. 1206, 1207 (S.D. Fla. 1991) (holding that company employee "cannot hide behind the corporate shield, and is personally liable for all infringing acts which he has committed."); *see also Contemporary Restaurant Concepts, Ltd. v. Las Tapas-Jacksonville, Inc.,* 753 F. Supp. 1560, 1565 (M.D. Fla. 1991)("It is well established that a corporate officer can he held liable for the acts of trademark infringement if it is shown that the individual caused such acts to occur.") and *Mead Johnson & Co. v. Baby's Formula Serv., Inc.,*

402 F.2d 19, 23 (5th Cir.1968)( (if an individual actively and knowingly caused the infringement, he or she is personally liable).

In the instant case, it is undisputed that Acea, before his employment with On Track of Florida terminated, formed two businesses, Just On Track and JOT and that he directed the use of the On Track Marks in connection with the promotion of those companies. Acea chose the names "Just on Track" and "JOT" to trade on the goodwill associated with the On Track Marks. Shortly after forming Just On Track and JOT, Acea began contacting On Track Florida's customers while still employed with On Track Florida. Thereafter, JOT received payment for services actually performed by On Track Florida and over the course of the next several months, Acea's companies collected $499,191.97 from On Track Florida customers.[3] Acea's conduct in infringing on the On Track Marks is both intentional and willful conduct, entitling Plaintiff On Track to recover its costs of the action and attorneys' fees pursuant to 15 U.S.C. §1117(a).

### 2.   *Accounting*

As a result of the Chapter 7 filing by Defendants Just On Track and JOT, the Plaintiffs' claim for an accounting is moot.

### 3.   *Unfair Competition*

The test of unfair competition in use of trade name is whether potential customers of first appropriator of trade name actually do business with second appropriator under the mistaken impression that they are doing business with the first. *Junior Food Stores of West Florida, Inc. v. Junior Food Stores, Inc.*, 226 So.2d 393 (Fla. 1969).   In order to prove a case of unfair competition, it is not necessary to show that any person has been actually deceived by defendant's

---

[3] Between July 2005 and February 2006, On Track Florida customers, Excel and Hanover, paid JOT $198,393.07 and $43,926.40, respectively, for its services. Additionally, between August 2005 and January 2006, Crowley paid JOT $256,872.50 for its services. These sums represent profits which Acea should disgorge.

conduct and led to purchase his goods in the belief that they are the goods of plaintiff or to deal with defendant thinking he was dealing with plaintiff, it is sufficient to show that such deception will be the natural and probable result of defendant's acts. *American Bank of Merritt Island v. First American Bank and Trust,* 455 So.2d 443 (Fla. 5th DCA 1984).

As explained above, Acea formed his businesses and began soliciting On Track Florida's customers while still employed with On Track Florida. Acea deceived On Track Florida's customers into doing business with Just On Track and JOT. These shippers paid hundreds of thousands of dollars to Acea's company, JOT, for work performed by On Track Florida. Acea deceived On Track Florida's customers into believing that his companies were authorized by or affiliated with On Track. Accordingly, Plaintiff On Track is entitled to the entry of summary judgment against Acea for the profits derived by impermissibly using the On Track Marks.

### 4. *Unjust Enrichment*

The elements of an unjust enrichment claim are a benefit conferred by the plaintiff on a defendant who has knowledge of that benefit and who accepts and retains the benefit under the circumstances where it would be inequitable for the defendant to retain the benefit without paying for it. *N.G.L. Travel Associates v. Celebrity Cruises, Inc.,* 764 So.2d 672 (Fla. 3d DCA 2000). Acea deceived three of On Track Florida's customers, Excel, Hanover and Crowley, into conducting business with JOT by using the On Track Marks licensed to On Track Florida. Thereafter, these shippers paid hundreds of thousands of dollars to JOT for work performed by On Track Florida. Acea, having deceived and confused customers into believing that Just On Track and JOT were authorized by On Track, was unjustly enriched. Accordingly, On Track is entitled to the entry of summary judgment against Acea on Count IV.

### 5. *Breach of Duty of Loyalty by Acea*

An employee may not engage in disloyal acts in anticipation of his future competition, such as using confidential information acquired during the course of his employment or soliciting customers and other employees prior to the end of his employment. *Fish v. Adams*, 401 So.2d 843 (Fla. 5th DCA 1981); *Insurance Field Services, Inc. v. White & White Inspection & Audit Service, Inc.,* 384 So.2d 303 (Fla. 5th DCA 1980).

Acea breached his duty of loyalty when he formed Just On Track and JOT during his employment with On Track Florida and proceeded to steal On Track Florida's customers for the competing companies. Excel's records reflect that as of July 25, 2006, On Track Florida was still being recognized as the shipper for Excel, but never received payment for those jobs. Instead, payment for those services went to JOT. Similarly, Hanover's records show "JOT Transportation LLC" being paid for services that were also provided by "On Track Transportation" as Hanover's "Outside Trucking Co." on July 27 and 28, 2005--again prior to Acea's termination. Accordingly, summary judgment should be entered on Count V in favor of On Track Florida and against Acea in the amount of $499,191.97 for the profits derived by JOT from Excel, Hanover and Crowley resulting from Acea's misconduct.

On Track Florida is also entitled to judgment against Acea for the unaccounted for Comdata Comcheks and Fuel Cards. Despite his reporting obligation to On Track Florida, Acea failed to provide On Track Florida with all of the information to properly deduct the Comchek and Fuel Card advances from the drivers' payments, including those due from Acea himself. On Track Florida's inability to reconcile these resulted in losses to On Track Florida in the amount of $185,051.86.

### 6.    *Accounting from Acea*

On Track Florida is entitled to an accounting from Acea regarding the Comcheks and Fuel Cards. *See Bankers Trust Realty, Inc. v. Kluger,* 672 So. 2d 897 (Fla. 3d DCA 1996); *Dahlawi v.*

*Ramlawi*, 644 So. 2d 523 (Fla. 3d DCA 1994). Without the accounting, On Track Florida cannot ascertain which drivers it should bill for certain Comcheks and Fuel Cards. On Track Florida's entitlement to summary judgment on its accounting claim is further bolstered by Acea's continuing refusal to produce a single document and failure to inspect the documents Plaintiffs sent to Florida pursuant to Court Order. Furthermore, the Court has stricken Acea's affirmative defenses to and denials of On Track Florida's claim relating to the Comcheks and Fuel Cards. Only through an accounting can On Track Florida receive a full, adequate and expeditious remedy.

7.   *Tortious Interference with Advantageous Business Relationship*

The elements of a claim for tortious interference with business relationship are: (1) the existence of a business relationship, (2) knowledge of the relationship on the part of the defendant, (3) an intentional and unjustified interference with the relationship by the defendant, and (4) damages to the plaintiff as a result of the breach of the relationship. *Networkip, LLC v. Spread Enterprises, Inc.,* 922 So.2d 355 (Fla. 3d DCA 2006).

Acea, through his association with On Track Florida, was aware of On Track Florida's relationships with Excel, Hanover and Crowley. Acea's conduct in purposefully contacting these customers and inducing them to believe that Acea was acting on behalf of On Track Florida caused these customers to pay JOT for work performed by On Track Florida and/or to give JOT work for which it was paid hundreds of thousands of dollars. The record reflects that On Track Florida was damaged in the amount of $499,191.97, representing the sums paid by Hanover, Excel and Crowley to JOT.

## IV.   Conclusion.

After reviewing Plaintiffs' Motion for Summary Judgment and all supporting declarations and documents, the Court finds in favor of Plaintiffs on the grounds that there are no genuine issues

of material fact and that Plaintiffs are entitled to judgment in their favor and against Defendant Acea as a matter of law as follows:

1.       On Counts I, III, IV, V, in favor of On Track Transportation, Inc. and against Tomas Acea, for damages in the amount of $499,191.97, together with attorneys' fees under 15 U.S.C. §1117 and costs;

2.       On Counts V, in favor of On Track Transportation FL., Inc. and against Tomas Acea, for damages in the amount of $185,051.86, together with costs;

3.       On Count VI, in favor of On Track Transportation FL., Inc. and against Tomas Acea, for an accounting of all income earned by Acea from Comcheks and Fuel Cards; and

4.       On Count VII, in favor of On Track Transportation FL., Inc. for damages in the amount of $499,191.97, together with costs.

DONE AND ORDERED in chambers at the James Lawrence King Federal Justice Building and United States Courthouse, Miami, Florida, this 11th day of October, 2006.

JAMES LAWRENCE KING
UNITED STATES DISTRICT JUDGE

cc:     Mary Leslie Smith, Esq.
        BUCHANAN INGERSOLL & ROONEY, PC
        Bank of America Tower
        100 Southeast Second Street, 34th Floor
        Miami, FL 33131
        Facsimile: (305) 347-4089
        *Counsel for Plaintiffs*

        Michael S. Kaufman, Esq.
        MICHAEL S. KAUFMAN, P.A.
        11900 Biscayne Blvd., Suite 511
        Miami, FL 33181
        Facsimile: (305) 893-8413
        *Counsel for Defendants*